UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SAM STANCIEL,                                                    Civil No. 06-3730 (PJS / SRN)

           Petitioner,

           **REPORT & RECOMMENDATION**

v.

CAROL HOLINKA, WARDEN,

           Respondent.

---

    Sam Stanciel, Petitioner, pro se.

    Michael A. Dees, Assistant United States Attorney General, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondent.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    This matter is before the undersigned Magistrate Judge of the District Court on the application of Petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The case has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the petition be denied and that this action be dismissed with prejudice.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

    Petitioner is currently incarcerated in a federal correctional facility pursuant to a 1998 conviction for conspiracy to distribute controlled substances and for money laundering. His present application for a writ of habeas corpus claims that the Bureau of Prisons ("BOP") improperly rejected his application for admission into the Residential Drug Abuse Program ("RDAP"), a program established to treat the substance abuse problems of certain eligible federal prisoners. See 18 U.S.C. § 3621(b), (e).

Petitioner's Pre-sentence Investigation ("PSI") Report "indicated that he never used any kind of illegal controlled substances" and that he drank alcohol only "sparingly." (Doc. No. 7-1, ¶ 4.) The June 1998 Psychology Services Intake Screening form indicates that Petitioner "does not report a history of substance abuse." (Doc. 7-3.) It also notes that he stated "that he is a social drinker and does not use other drugs." (Id.)

Nevertheless, in early 2005, Petitioner applied for the RDAP. The March 2005 Notice To Inmate from the BOP indicated that he did "not meet the clinical criteria to qualify for participation in RDAP." (Doc. 7-2.) The coordinator of the program at the facility where Petitioner is incarcerated states that her decision was "based on the significant inconsistency i[n] his self-report and lack of supportive documentation indicating a problem." (Doc. No. 7-1, ¶ 5.) She explained that "[h]is self-admission and the affidavits of friends do not support the DSM-IV diagnosis of illegal substance abuse or dependency." (Id., ¶ 5 n.1.)

In May 2005, Petitioner requested the sentencing judge, Chief Judge Robert L. Miller, Jr. of the United States District Court, Northern District of Indiana, to recommend him for the BOP's RDAP. Judge Miller denied that request "[b]ecause the presentence report in this case reflects the defendant's statement that he had never used any controlled substances in his life." (Doc. No. 6.)

Having exhausted his administrative remedies, Petitioner then filed the present Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, claiming that the government abused its discretion in denying him enrollment in the RDAP. (Doc. No. 1.) This Court directed the Government to file a response showing cause why the writ should not be granted. (Doc. No. 2.) The Government complied (Doc. Nos. 4-8) and Petitioner filed a reply (Doc. No. 10).

**II.     DISCUSSION**

Petitioner generally contends that BOP officials improperly denied him admission to the prison's drug abuse program because he met the BOP's own requirements for enrollment in such program. Petitioner relies mainly on his own self-assessment and on several affidavits of friends that generally assert that Petitioner has a long history of substance abuse.

The BOP is required, "subject to the availability of appropriations, [to] provide residential substance abuse treatment" for "all eligible prisoners." 18 U.S.C. § 3621(e)(1). As an incentive to prisoners, Congress provided that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." Id. § 3621(e)(2)(B). As several courts have noted, the RDAP has proved popular with prisoners because, "[b]eyond its rehabilitative potential," it also provides "the possibility of a one-year early release." Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 602 (N.D.W.V. 2007). Accord Lopez v. Davis, 531 U.S. 230, 241 (2001) ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment."); Laws v. Barron, 348 F. Supp. 2d 795, 800 (E.D. Ky. 2004).

An "eligible prisoner" is a prisoner who is "(i) determined by the Bureau of Prisons to have a substance abuse problem; and (ii) willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B). The statute does not define "substance abuse problem," but clearly delegates to the BOP the authority and discretion to determine who has such a problem. Id. (defining eligible prisoners as those "determined by the [BOP]" to be

eligible); Laws, 348 F. Supp. 2d at 800 ("Thus, Congress has clearly authorized the BOP to select those prisoners who will be best served by participation in such a program.").

In general, "the BOP is given significant statutory discretion in operating the RDAP program." Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 604 & n.2 (N.D.W.V. 2007) (collecting cases). "[W]here Congress has enacted a law that does not answer 'the precise question at issue,' all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" Lopez v. Davis, 531 U.S. 230, 242 (2001) (concluding that BOP's interpretation of Section 3621(e)(2)(B) so as to take into account preconviction conduct and to categorically exclude certain prisoners from RDAP is reasonable).[1]

Because the statute "does not set forth the criteria for determining whether an inmate has 'a substance abuse problem,' the BOP has exercised the broad discretion granted to it to establish criteria for making such a judgment." Laws, 348 F. Supp. 2d at 800. Under the federal regulation governing eligibility for the RDAP, "[a]n inmate must meet all" five specified "criteria to be eligible for the residential drug abuse treatment program" including, as relevant here, the requirement that "[a]n inmate must have a verifiable documented drug abuse problem." 28 C.F.R. § 550.56(a) (emphasis added). "[U]nder the federal regulations, the Bureau has broad authority to manage the enrollment of prisoners in drug abuse treatment programs." United

---

[1] In Lopez, the Supreme Court addressed a different, but somewhat analogous, issue regarding the RDAP program: whether the BOP may implement a regulation "categorically den[ying] early release to prisoners whose current offense is a felony attended by 'the carrying, possession, or use of a firearm.'" 531 U.S. at 232-33. The Supreme Court's conclusion, that "the regulation is a permissible exercise of the Bureau's discretion under 18 U.S.C. § 3621(e)(2)(B)," id., provides general support for this Court's conclusion that the BOP possesses broad discretion in administering the RDAP program.

States v. Jackson, 70 F.3d 874, 878 (6th Cir. 1995).[2]

The BOP has issued numerous "Policy Documents," which are "called Program Statements at the BOP." See www.bop.gov/policy. The relevant Program Statement at issue here is the BOP's "Drug Abuse Programs Manual, Inmate," Program Statement No. 5330.10 ("Drug Abuse Program Statement"). Id. The Drug Abuse Program Statement provides, with respect to the federal regulation governing program eligibility, that "drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting" an interview "followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information." Id. (emphasis added). "The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition (DSM-IV)." Id.

> Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse

---

[2] The Government asserts that "[t]he BOP has sole authority to determine which prisoners will participate in the drug-treatment program." (Doc. No. 4 (citing United States v. Gary, 104 Fed. Appx. 614 (8th Cir. 2004)). The Eighth Circuit's decision in Gary, in turn, cites United States v. Jackson, 70 F.3d 874, 877-78 (6th Cir. 1995), in which the Sixth Circuit concluded "that it was beyond the District Court's authority to order defendant's participation in a drug treatment program while incarcerated." Id. Insofar as the Government suggests that the BOP's discretion is not subject to any judicial review, the Court rejects any such suggestion. In Jackson, the court merely held that the sentencing court could not "order a defendant's participation in a drug rehabilitation program" as part of the defendant's sentence, but could "recommend that prisoner receive drug rehabilitation treatment while incarcerated." 70 F.3d at 878. The BOP's exercise of its discretion in determining eligibility for such programs, however, is subject to judicial review. See Laws v. Barron, 348 F. Supp. 2d 795, 803 (E.D. Ky. 2004) (concluding that court may review to determine "(1) if a cognizable constitutional claim has been presented; or (2) if the agency's interpretation of the statutory language 'contravenes well-settled case law'").

problem.

Id. (emphasis in original).[3]

In short, to qualify for RDAP an inmate must first be diagnosed according to the criteria of the DSM-IV for substance abuse or dependency disorders. (Doc. No. 7-1 (Declaration of Dr. Amy Boncher, ¶ 3).) Under those criteria, clinically significant symptoms must be in evidence in the 12 months preceding the diagnostic interview. (Id.) The BOP's adoption of that standard expanded the relevant period to include the 12 months preceding the inmate's arrest. (Id.) Perhaps most importantly, any diagnosis resulting from self-reported admissions during the interview must be corroborated.

Petitioner now claims that he "was denied eligibility to enter the RDAP program for failing to provide documentation of substance abuse during the 12-month period preceding his incarceration." (Doc. No. 1, at p. 7.) He contends that the "denial is contrary to the statute and an unreasonable exercise of [the BOP's] discretion." (Id.)[4] Petitioner asserts that he "has provided a variety of verifiable documentations" of his substance abuse, namely (1) certificates from the BOP's "self-help treatment programs" that "establish Petitioner's own admission of

---

[3] This Manual, like all of the BOP's Program Statements, is only an internal guideline rather than a published regulation subject to the rigors of the Administrative Procedure Act, but is nevertheless entitled to "some deference" as long as it is a permissible construction of the statute. Laws v. Barron, 348 F. Supp. 2d 795, 802 (E.D. Ky. 2004); see Reno v. Koray, 515 U.S. 50, 61 (1995) (explaining that internal agency guidelines are "akin to an 'interpretive rule'" and thus are "entitled to some deference" if they are "a 'permissible construction of the statute'").

[4] Petitioner apparently does not challenge the validity of the BOP's regulations and guidelines on their face, contending instead only that the BOP abused its substantial discretion in applying those standards to his application. (Doc. No. 1, at p. 7.) But in any event, other courts have found "that the BOP's guidelines for RDAP eligibility are persuasive and reasonable" and that "the BOP's reliance on the DSM-IV to help determine the terms of eligibility is likewise reasonable." Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 605 (N.D.W.V. 2007).

alcohol and drug abuse," and (2) "detailed affidavits from individuals that know and have personally experienced his alcohol and drug abuse intimately." (Id.)

But the evidence on which he relies is not only self-serving but also contrary to the rest of the evidence, including that which is subject to objective verification.[5] Petitioner's present claim of his substance abuse is directly contrary to his statements in his PSI. While he now claims he was not fully forthcoming in making those earlier statements, any such lack of candor then hardly establishes his credibility now, particularly in light of the well-recognized fact that inmates seek admission to the RDAP in the hope of having their sentences shortened upon completion of that program. Cf. Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 605 (N.D.W.V. 2007) (noting inconsistencies between Petitioner's PSI and his subsequent application for RDAP).

Likewise, the affidavits on which he also relies need to be evaluated objectively. See id. (noting that attractiveness of "possibility of early release after successfully completing the RDAP" makes it "reasonable for the BOP to adopt screening processes to make sure that the applicants are legitimately qualified for the program"). But each of the four affidavits–contrary to his characterization of them as being "in-depth and detailed"–is brief and conclusory and all four are similar in format and coverage. (See Doc. No. 10, Ex. B.) As the court in Dellarcirprete noted, "the affidavits submitted by [Petitioner's] family members nearly two years after [he] first attempted to enter the RDAP have the same reliability problems that [his] self-reported

---

[5] Petitioner claims that under the criteria of the DSM-IV, his own "admissions" of drug abuse and the supporting affidavits of others satisfy the requirement that he prove the existence of one or more of those criteria to be diagnosed with a substance abuse problem. (Doc. No. 10.) But a prisoner's self-diagnosis is not sufficient under the law and the BOP is entitled to "corroborate self-reported information" of an applicant for RDAP.

allegations have." 479 F. Supp. 2d at 606 (noting that "claims present in his family members' affidavits were absent in his pre-sentence report").

Moreover, each lacks any reference to the temporal period during which they allegedly observed Petitioner's substance abuse. In light of the requirement that an inmate demonstrate substance abuse within the 12 months before his arrest or incarceration, such omissions undermine whatever evidentiary value the affidavits might otherwise possess.

Although Petitioner challenges the BOP's authority to focus on this particular 12-month period, his reliance on Mitchell v. Andrews, 235 F. Supp. 2d 1085 (E.D. Cal. 2001), and Kuna v. Daniels, 234 F. Supp. 2d 1168 (D. Or. 2002), is misplaced. Apart from the fact that those decisions from other jurisdictions are not binding here, they are factually distinguishable. Mitchell, 235 F. Supp. 2d at 1085 (noting that interview disclosed periodic use of alcohol, marijuana and cocaine during applicant's "last period of 12 consecutive months on the street"); Kuna, 234 F. Supp. 2d at 1168 (noting that "Petitioner's eligibility interview supported a DSM-IV diagnosis of alcohol dependence"). Moreover, the Court finds them unpersuasive. See Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 606 (N.D.W.V. 2007) (rejecting the Mitchell court's analysis of BOP policy).

For the same reasons, this Court is not persuaded by the reasoning of Smith v. Vazquez, which held that the BOP's practice of focusing on the "12 months preceding arrest" was an unreasonable exercise of the BOP's discretion in light of the fact that the DSM-IV makes no such reference to arrest or conviction. 491 F. Supp. 2d 1165, 1168 (S.D. Ga. 2007). The fact that the DSM-IV does not expressly direct focus on any particular timeframe just prior to arrest is of little significance in the penal context. The DSM-IV addresses mental illness in general,

not in any particular context, much less the penal context specifically.  Dellarcirprete, 479 F. Supp. 2d at 606.  In the penal context, it seems quite reasonable for the BOP to focus on the period just prior to arrest because that would be the most current and relevant timeframe for diagnosing an inmate's substance abuse for purposes of treatment while incarcerated.  Earlier timeframes could likely reflect only substance abuse problems that are in remission.  Id.

Furthermore, another court recently rejected the reasoning of Smith, finding Dellarcirprete v. Gutierrez the "more persuasive case."  Wells v. Rivera, 2007 WL 4219002, at *7 (N.D. Fla. Nov. 28, 2007).  Finally, the ruling in Smith appears to be a minority position.  Colon v. Craig, 2007 WL 3076926, *5-6 (N.D.N.Y. Oct. 19, 2007) (surveying "split among the circuits" and concluding that "the majority of the caselaw [has] upheld the BOP's interpretation").  And in any event, even if the appropriate diagnostic period was not confined to the 12 months prior to arrest, the only evidence supporting Petitioner's eligibility would be his present "admission" of substance abuse and the affidavits of his friends.  But the former remains inconsistent with his other statements and the latter continue to suffer from reliability problems.

## III.   CONCLUSION

The record discloses no abuse of the BOP's broad discretion in determining that Petitioner was not eligible for admission into the RDAP.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.    Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) be DENIED; and

    2.       This action be DISMISSED WITH PREJUDICE.

Dated:  January 7, 2008

                                                                  s/  Susan Richard Nelson

                                                             SUSAN RICHARD NELSON
                                                             United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by January 22, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.